JUDGE SCHOFIELD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RINALDO BOOKER,

    Plaintiff,

v.

FLEXTRONICS AMERICA LLC,

    Defendant.

Case No.: 13 CV 2325



## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Rinaldo Booker, ("Plaintiff" or "Mr. Booker"), by and through his attorneys, The Ottinger Firm, P.C., as and for his Complaint in this action against Defendant Flextronics America LLC ("Defendant" or "Flextronics") alleges as follows:

## NATURE OF THE CLAIMS

1. This is an action seeking declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful interference with, restraint, and denial of Plaintiff's exercise of and/or attempt to exercise his rights under the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq. (the "FMLA"), as well as Defendant's discriminatory treatment and unlawful termination of Plaintiff's employment due to his disability in violation of the New York City Human Rights Law, New York City Administrative Code §§ 8-101 et seq. (the "City HRL").

2. Specifically, Defendant violated the FMLA by denying Plaintiff 12 weeks of FMLA-protected leave and unlawfully terminating his employment for exercising and/or attempting to exercise his rights under the FMLA.

3. Defendant's discriminatory and otherwise unlawful conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, and has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under city law pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because Defendant maintains a place of business in this district and because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PROCEDURAL REQUIREMENTS

6. Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq., as amended ("ADA"), as amended. Plaintiff's EEOC charge arises out of the same facts alleged herein.

7. When the EEOC issues Plaintiff a notice of right to sue, Plaintiff will seek leave to amend this Complaint to add claims that Defendant violated the ADA as well.

8. Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

9.     Plaintiff Rinaldo Booker is a former employee of Flextronics who resides in the State of New York. He was employed by Defendant in New York as a Technical Support/ Customer Service provider who was assigned to work in AT&T mobile phone stores in Syracuse, New York and New York City. He was hired in July 2010 and his employment ended on March 28, 2012. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

10.     Defendant Flextronics describes itself on its website as a "global leader in design, manufacturing, distribution and aftermarket services." Flextronics' main corporate headquarters are in Singapore. Its US Headquarters are located at 6201 America Center Drive, San Jose, CA. At all relevant times, Defendant met the definition of "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

### Mr. Booker's Employment With Flextronics

11.     Mr. Booker commenced his employment with Flextronics in July 2010 as a Technical Support/ Customer Service provider based in AT&T Mobile phone stores in Syracuse, New York

12.     In July 2011, Mr. Booker, per his request, was transferred to New York City to work as a Technical Support/ Customer Service provider based in AT&T Mobile phone stores in New York City.

13.     Mr. Booker was well qualified for the position he held and, indeed, always performed his duties in a highly professional and competent manner throughout the course of his employment with Defendant.

14.     On March 14, 2012, Mr. Booker's aunt, Ms. Ethel Gibson, passed away in Macon, Georgia. Mr. Booker was raised by his Aunt Ethel so her death was like the loss of his mother.

15.     On the same day, Mr. Booker asked if he could use his accrued PTO (personal time off) to attend his aunt's funeral in Georgia. Dominique Revere, Human Resources Manager at Flextronics, informed Mr. Booker via email that he "can certainly use PTO, that just has to be worked out with the manager."

16.     Mr. Booker accordingly obtained permission from his manager, Ms. Courtney Gaddy, and was given an open ended leave to attend the funeral.

17.     During the same conversation in which he was granted leave to attend the funeral, Mr. Booker also disclosed to Ms. Gaddy that he has been battling depression since High School and they had a subsequent conversation about his depression problem and even discussed instances when Mr. Booker had considered suicide.

18.     On March 17, 2012, Mr. Booker traveled by bus from New York City to Macon, Georgia to attend his aunt's funeral.

19.     On March 19, 2012, Mr. Booker attended the funeral.

20.     On March 20, 2012, Mr. Booker flew back to New York City.

21.     On March 21, 2012, Mr. Booker returned to work and was advised that he was to be transferred to a new AT&T store on 125th Street in Harlem (the "125th Street Store"). Mr. Booker informed Ms. Gaddy that he was having a depressive episode, but was shocked and unsettled to be told by Ms. Gaddy that he had to "get his act together" or he would be fired.

4

22. On March 22, 2012, Mr. Booker called in sick due to depression and informed Liana Assing, the supervisor of the 125th Street Store, that he was going to see his doctor. Mr. Booker went to the clinic to see his doctor but the doctor was not in.

23. Mr. Booker returned to work on March 23rd and 24th, but his depression set in and was unable to work additional days.

24. On March 29, 2012, Mr. Booker was finally able to see Dr. Angulo at the clinic, where he was diagnosed with worsening depression and referred for an assessment for out patient care.

25. On April 1, 2012, Mr. Booker could not go to work due to worsening depression and could not call into work.

26. On April 2, 2012, Mr. Booker contacted Flextronics' human resources administration company, ADP, and requested disability leave as a result of his worsening depressive episodes. Mr. Booker was informed that leave would be granted if he sent in a formal request for leave with medical documentation.

27. Mr. Booker promptly submitted a written request for leave and FMLA leave was granted retroactively from March 25, 2012 to May 31, 2012.

28. Flextronics, however, terminated Mr. Booker's employment during his approved leave period. Mr. Booker received a letter from ADP COBRA Services dated April 2, 2012 referencing a March 28, 2012 termination date.

29. Based upon these facts, by failing and refusing to honor Mr. Booker's FMLA Leave, and by thereafter abruptly terminating his employment, Defendant discriminated and retaliated against Mr. Booker based on his disability and/or its perception that he is "disabled."

30. As a result of Defendant's unlawful discriminatory and retaliatory conduct, including, but not limited to, the wrongful termination of Mr. Booker's employment, Mr. Booker has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, the loss of past and future income, compensation and other benefits to which he would otherwise be entitled.

31. As a further direct and proximate result of Defendant's unlawful actions, Mr. Booker has suffered damage to his reputation and career.

32. As a further direct and proximate result of Defendant's unlawful actions, Mr. Booker has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury.

33. Additionally, in March 2011, during his employment with Defendant, Mr. Booker was diagnosed as being infected with the Human Immunodeficiency Virus ("HIV"), a condition that requires complex, stable and ongoing medical treatment.

34. Unlike other conditions, HIV is one that can be permanently and irreversibly exacerbated upon a sufferer being subjected to extreme stress; specifically by way of exposing a sufferer to a reduction in the body's CD4+ count and thus a much quicker and higher chance that the once-controlled condition will develop into Acquired Immune Deficiency Syndrome ("AIDS").

35. Prior to his termination from Defendant, Mr. Booker's immune system and CD4+ count registered above what is medically recognized as the AIDS level.

36. However, as a result of the stress and emotional pain and suffering to which he was subjected by way of Defendant's discriminatory treatment and unlawful

termination of his employment, Mr. Booker's immune system degenerated and CD4+ count was reduced, and he is now categorized as having AIDS.

37. Defendant's discriminatory and unlawful conduct against Mr. Booker was intentional and malicious and/or showed a deliberate, willful, wanton and reckless disregard for his rights under the City HRL.

## FIRST CAUSE OF ACTION
### (Violation of the FMLA)

38. Plaintiff alleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

39. At all relevant times, Mr. Booker was an "eligible employee" within the meaning of the FMLA. Similarly, at all relevant times herein, Defendant was and is a "covered employer" within the meaning of the FMLA.

40. Defendant violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of and/or attempts to exercise Mr. Booker's rights thereunder by, *inter alia*, denying him 12 weeks of FMLA-protected leave and by terminating his employment for exercising and/or attempting to exercise his rights under the FMLA.

41. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Mr. Booker has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

42. Defendant's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Mr. Booker is entitled to an award of liquidated damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the FMLA)

43. Plaintiff alleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

44. At all relevant times, Mr. Booker was an "eligible employee" within the meaning of the FMLA. Similarly, at all relevant times herein, Defendant was and is a "covered employer" within the meaning of the FMLA.

45. Defendant unlawfully retaliated against Mr. Booker by terminating his employment for exercising and/or attempting to exercise his rights under the FMLA.

46. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the FMLA, Mr. Booker has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

47. Defendant's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Mr. Booker is entitled to an award of liquidated damages.

## THIRD CAUSE OF ACTION
### (Disability Discrimination in Violation of the City HRL)

48. Plaintiff alleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

49. Defendant has discriminated against Mr. Booker on the basis of his disability in violation of the City HRL by denying him equal terms and conditions of employment available to employees who are not disabled, including, but not limited to, by terminating his employment following the disclosure of his depressive disorder and his subsequent request for a leave of absence.

50. As a direct and proximate result of Defendant's discriminatory conduct in violation of the City HRL, Mr. Booker has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of damages.

51. As a direct and proximate result of Defendant's discriminatory conduct in violation of the City HRL, Mr. Booker has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

52. Defendant's unlawful and discriminatory conduct in violation of the City HRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A   A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violated the laws of the United States and the City of New York;

B   An injunction and order permanently restraining Defendant and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with then, from engaging in such unlawful conduct;

  C  An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory, retaliatory and otherwise unlawful conduct, as well as to take such affirmative actions, including, but not limited to, reinstatement as is necessary to ensure that the effects of these unlawful employment practices are eliminated and to not continue to affect Plaintiff's employment;

  D  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic hard, including, but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

  E  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including, but not limited to, compensation for his severe mental anguish and emotional distress, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem self-confidence and personal dignity, emotional pain and suffering and any other physical or mental injuries;

  F  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

  G  An award of liquidated damages in an amount to be determined at trial pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

  H  An award of punitive damages under the City HRL;

  I  An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J       Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: April 9, 2013
New York, New York          Respectfully submitted,

THE OTTINGER FIRM, P.C.

By: /s/ Robert W. Ottinger
Robert W. Ottinger

20 West 55th St., 6th Floor
New York, New York 10019
Telephone: (212) 571-2000
Facsimile: (212) 571-0505
robert@ottingerlaw.com

*Attorneys for Plaintiff*